NOTICE
Decision filed 10/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230656

NO. 5-23-0656

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 22-CF-403 |
| | ) | |
| JAYLEN R. SMITH, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justices Vaughan and Sholar concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial in the circuit court of Jefferson County, defendant, Jaylen R. Smith, was found guilty of armed violence (720 ILCS 5/33A-2(a) (West 2022)) and sentenced to 18 years in prison. Defendant appeals, arguing that the armed violence statute violates his second amendment (U.S. Const., amend. II) right to carry a handgun for self-defense, both facially and as applied to him, following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). For the following reasons, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3     On December 5, 2022, the State charged defendant by information with one count of armed violence (720 ILCS 5/33A-2(a) (West 2022)), a Class X felony, with the predicated felony of possession of a controlled substance (720 ILCS 570/402(c) (West 2022)). In support, the State

1

alleged that "while armed with a dangerous weapon, a Taurus 9mm firearm, *** [d]efendant knowingly possessed less than 15 grams of a substance containing cocaine." A grand jury subsequently returned a bill of indictment charging defendant with the same.

¶ 4 At the trial held on March 1, 2023, the jury heard evidence that police stopped a reportedly stolen vehicle on December 2, 2022. The driver and front passenger fled after the stop, leaving two backseat passengers in the vehicle. One of the backseat passengers was defendant. The other backseat passenger was ordered out of the vehicle and searched. Police found .45-caliber ammunition and suspected cocaine on this passenger. Police then searched defendant and found a loaded 9-millimeter Taurus handgun in his front waistband. Police also found 0.3 grams of suspected cocaine in defendant's back pants pocket. Defendant was then placed under arrest.

¶ 5 Defendant gave a recorded statement to police, which was played for the jury. In the statement, defendant claimed he found the firearm on the ground two days before his arrest and decided to keep it. When asked where he obtained the cocaine, defendant responded, "I'm a user." Defendant did not know if he would test positive for cocaine at that time. When asked if he made money from drugs, defendant, again, stated that he was a user and that he went to drug rehab. Defendant reiterated that the cocaine was for his "personal use." Forensic testing revealed that the gun found in defendant's waistband was operational and that the substance found in his back pocket was in fact cocaine.

¶ 6 The jury received the following instruction: "A person commits Armed Violence when he commits the offense of Unlawful Possession of a Controlled Substance while armed with a handgun." The jury was also instructed that the State was required to prove two propositions: (1) that defendant "committed the offense of Unlawful Possession of a Controlled Substance" and (2) that defendant was armed with a firearm when he committed the offense. After considering the

2

evidence, the jury found defendant guilty of armed violence predicated on possession of a controlled substance.

¶ 7     The presentence investigation report (PSI) demonstrated that defendant was 19 years old. Defendant reported that he was a daily marijuana user and that he began using cocaine at age 18. Defendant claimed that he was not a daily cocaine user and that he stopped using cocaine in November 2022. According to the PSI, defendant's juvenile criminal history included the following: a 2019 residential burglary charge, which was amended to criminal trespass pursuant to a plea agreement; a 2020 obstructing identification charge; and 2021 aggravated battery and battery charges. Defendant's adult criminal history included a 2022 resisting a peace officer charge.

¶ 8     At the sentencing hearing on April 27, 2023, the trial court clarified that the sentencing range defendant faced for armed violence was between 15 and 30 years in prison, to be served at 50%. The State presented evidence establishing that the 2021 aggravated battery and battery charges were based on an incident where defendant allegedly stabbed his own mother and his mother's ex-boyfriend. The trial court considered the aggravating factors of deterrence and defendant's criminal history. The court considered in mitigation defendant's age and social history and that defendant's conduct did not cause or threaten serious physical harm. The court ultimately sentenced defendant to 18 years in prison, to be served at 50%. The trial court also recommended that defendant participate in substance abuse treatment in prison.

¶ 9     On May 4, 2023, defendant filed a motion to reconsider sentence. The trial court subsequently denied the motion. Defendant filed a timely notice of appeal.[1]

---

[1]This court allowed several motions to cite additional authority during the pendency of this appeal. The State filed a motion for leave to cite *People v. Thompson*, 2025 IL 129965, as additional authority on July 1, 2025, and we took the motion with the case. We now grant the State's motion but do not find *Thompson* applicable in the instant case.

II. ANALYSIS

¶ 11    Defendant argues for the first time on appeal that the armed violence statute violates his second amendment right under the United States Constitution (U.S. Const., amend. II), both facially and as applied to him.[2] We disagree.

¶ 12    "[S]tatutes are presumed constitutional, and we have the duty to construe statutes so as to uphold their constitutionality if there is any reasonable way to do so." *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 25 (citing *People v. Inghram*, 118 Ill. 2d 140, 146 (1987)). "The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation." *Id.* (citing *In re R.C.*, 195 Ill. 2d 291, 296 (2001)). "Whether a statute is unconstitutional is a question of law, which is reviewed *de novo*." *People v. Davis*, 2014 IL 115595, ¶ 26.

¶ 13    "A constitutional challenge to a statute may be either facial or as applied." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 11 (citing *People v. Rizzo*, 2016 IL 118599, ¶ 24), *pet. for leave to appeal pending*, No. 130804 (filed June 21, 2024). "A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, while an as-applied challenge depends on the particular facts and circumstances of the party." *Id.* (citing *Rizzo*, 2016 IL 118599, ¶ 24). "Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006) (citing *In re Parentage of John M.*, 212 Ill. 2d 253, 269 (2004)). " '[S]o long as there exists a

---

[2]While defendant did not raise these issues before the trial court, constitutional challenges may be raised at any time. See *People v. Davis*, 2014 IL 115595, ¶ 26.

situation in which a statute could be validly applied, a facial challenge must fail.' " *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)).

¶ 14 Defendant, here, was charged with armed violence, which provides: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law," except for certain specified predicate felonies not applicable here. 720 ILCS 5/33A-2(a) (West 2022). The predicate felony, here, was possession of a controlled substance (720 ILCS 570/402(c) (West 2022)). With this in mind, we consider defendant's argument that the armed violence statute violates the second amendment both facially and as applied to him.

¶ 15 "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "The United States Supreme Court has 'recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun' inside and outside the home 'for self-defense.' " *Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *Bruen*, 597 U.S. at 8-9, and citing *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)).

¶ 16 In *Bruen*, the United States Supreme Court set out the following two-part test for determining whether laws regulating conduct protected by the second amendment were valid under the constitution:

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls

5

outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)).

¶ 17  Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 18  In applying this test in *Bruen*, the Supreme Court concluded that a New York regulation that required individuals to demonstrate a "special need for self-defense" to carry a firearm in a public place, known as the "proper-cause requirement," was unconstitutional. *Bruen*, 597 U.S. at 38-39. In doing so, the Supreme Court analyzed the historical tradition of regulating the public carriage of firearms and concluded that the government "failed to meet their burden to identify an American tradition justifying New York's proper-cause requirement." *Id.*

¶ 19  In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered the analytical framework for second amendment claims following its decision in *Bruen*. In applying that analytical framework, the Supreme Court upheld a firearm restriction against an individual with a domestic violence restraining order. *Id.* at 699-700. The individual subject to the restraining order was found to pose " 'a credible threat to the physical safety' " of his girlfriend and child. *Id.* at 688-89. The Supreme Court conducted a historical analysis to assess whether the firearm restriction was permissible. *Id.* at 693-700. The Supreme Court ultimately found the restriction constitutional but rejected the government's argument that the individual was not protected under the second amendment because he was not " 'responsible,' " holding that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 701-02.

6

¶ 20    This court recently applied *Bruen* in considering a defendant's facial second amendment challenge to the unlawful use of a weapon by a felon (UUWF) statute (720 ILCS 5/24-1.1(a) (West 2022)). *People v. Stephens*, 2024 IL App (5th) 220828, *pet. for leave to appeal pending*, No. 131232 (filed Dec. 2, 2024). In doing so, this court, quoting *Bruen*, noted that " 'when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.' " *Id.* ¶ 24 (quoting *Bruen*, 597 U.S. at 17). This court further noted that the State must then justify its regulation of the conduct by demonstrating that the regulation is consistent with this nation's historical tradition of firearm regulation. *Id.*

¶ 21    In considering whether the plain text of the second amendment covered the regulated conduct in *Stephens* (*i.e.*, the defendant's possession of a taser), this court considered the State's argument that the defendant was not covered by the plain text of the second amendment because felons were "not included in 'the People' entitled to the full protection of the second amendment." *Id.* ¶ 27. This court further considered the State's contention that convicted felons fell outside the coverage of the second amendment because they were not law-abiding, responsible persons. *Id.*

¶ 22    In addressing the State's arguments, this court acknowledged that several other districts of the appellate court determined that "the protections afforded by the second amendment apply only to law-abiding citizens." *Id.* ¶ 28 (citing *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 22; *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28 ("*Bruen* strongly suggests the test only applies when a regulation impacts a law-abiding citizen's ability to keep and bear arms"); *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that the *Bruen* majority and concurrences repeated the phrase "law-abiding" 18 times), *pet. for leave to appeal pending*, No. 130174 (filed Nov. 3, 2023); and *People v. Burns*, 2015 IL 117387, ¶ 41 (Garman, C.J., specially concurring, joined by Thomas, J.) ("the right secured by the second amendment is held by 'law-abiding, responsible citizens' and

7

is not unlimited" (quoting *Heller*, 554 U.S. at 635))). This court noted, however, that a different panel from the First District held that felons were not excluded by the plain language of the second amendment under the first prong of *Bruen* and that a defendant's felony conviction should be evaluated under the historical tradition analysis set out in the second prong of *Bruen*. *Id.* ¶ 29 (citing *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, *pet. for leave to appeal pending*, No. 130153 (filed Oct. 30, 2023), and *Travis*, 2024 IL App (3d) 230113, ¶ 26)).

¶ 23    This court further noted that federal courts were split on "whether the phrase 'the people' as used in the second amendment categorically exclude[d] felons." *Id.* ¶ 30 (citing *United States v. Head*, 734 F. Supp. 3d 806, 814-15 (N.D. Ill. 2024)). This court recognized that some federal courts assumed, without deciding, that felons were among "the people" and proceeded to the second prong of the *Bruen* analysis (*id.* (citing *United States v. Stringer*, 742 F. Supp. 3d 840, 852-53 (C.D. Ill. 2024), *United States v. Wigfall*, 677 F. Supp. 3d 791, 796 (N.D. Ind. 2023))), while other federal courts found that felons were not protected under the plain text of the second amendment (*id.* (citing *United States v. McKay*, No. 23 CR 443, 2024 WL 1767605, at *2 (N.D. Ill. Apr. 24, 2024), and *United States v. Hall*, No. 22 CR 665, 2023 WL 8004291, at *2 (N.D. Ill. Nov. 17, 2023))). This court noted that other federal courts determined that felons were protected under the plain text of the second amendment (*id.* (citing *United States v. Ware*, 673 F. Supp. 3d 947, 956 (S.D. Ill. 2023), and *United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924, at *4 (N.D. Ill. Oct. 3, 2023))).

¶ 24    This court followed the reasoning of the federal court's decision in *Ware* and concluded that the defendant, despite his status as a felon, fell "into the category of 'the people' protected by the second amendment." *Id.* ¶ 33. However, this court noted that "the defendant's status as a felon [was not] irrelevant; rather, it [was] more properly evaluated under the second prong of the *Bruen*

analysis." *Id.* ¶ 34. This court ultimately concluded "that section 24-1.1(a) [was] consistent with this nation's historical tradition of firearm regulation" and held that the statute was constitutional on its face under the second amendment. *Id.* ¶ 39.

¶ 25    We respectfully disagree with the portion of *Stephens* holding that felons fall "into the category of 'the people' protected by the second amendment." *Id.* ¶ 33. We note that, as in *Stephens*, here, the State argues that defendant is not a law-abiding citizen and, thus, he is not protected by the plain language of the second amendment. Unlike *Stephens*, we agree with the State and find better reasoned the federal and appellate court decisions holding or suggesting that felons are not protected under the plain text of the second amendment. See *McKay*, 2024 WL 1767605, at *3; *Hall*, 2023 WL 8004291, at *2-4; *Kelley*, 2024 IL App (1st) 230569, ¶ 22; *Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28; *Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Arrington*, 2025 IL App (5th) 230344-U, ¶ 43. We acknowledge that, unlike the defendant in *Stephens*, defendant in this case was not considered a "felon" at the time he was charged. Despite this, we conclude that the federal court decisions holding that a felon is not a law-abiding citizen protected under the second amendment extend to a defendant who is in the process of committing a felony while simultaneously possessing an operational firearm. Notably, here, defendant's armed violence charge stemmed from his commission of the felony of possession of a controlled substance while simultaneously possessing an operational firearm. Given our differing view on the issue, we respectfully depart from the reasoning of *Stephens* and hold that a defendant who is in the process of committing a felony while possessing an operational firearm does not fall into the category of "the people" protected by the second amendment. In light of our holding that defendant is not a law-abiding citizen who is protected under the second amendment, we need not address

9

the second step of the analysis in *Bruen*, which considers whether the regulation is consistent with this nation's historical tradition of firearm regulation.

¶ 26 Nevertheless, even assuming *arguendo* that defendant was protected under the second amendment, the State, here, demonstrated that the regulation is consistent with this nation's historical tradition of firearm regulation. This court would consider defendant's simultaneous commission of a felony in evaluating the second prong of *Bruen*.

¶ 27 In *Stephens*, this court considered whether the UUWF statute was consistent with this nation's historical tradition of firearm regulation. *Stephens*, 2024 IL App (5th) 220828, ¶ 34 (citing *Bruen*, 597 U.S. at 17). Quoting *Bruen*, this court noted the following examples of when the historical analysis would be straightforward:

> " '[W]hen a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.' " *Id.* (quoting *Bruen*, 597 U.S. at 26-27).

In applying the second prong of *Bruen*, this court concluded that the UUWF statute—which prohibits the possession of firearms by any person previously convicted of a felony—was consistent with a long-standing tradition of similar regulations. *Id.* ¶ 36.

10

¶ 28    We note that in *Heller*, the Supreme Court appeared to agree with this reasoning, explaining as follows:

> "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27.

¶ 29    As noted above, defendant, here, was not technically a "felon" at the time he committed the armed violence offense. Rather, it was the simultaneous commission of the felony—possession of a controlled substance—while possessing a gun that led to the armed violence charge. Despite this distinction, this court would find that the longstanding prohibitions on the possession of firearms by felons apply equally to individuals who are in the process of committing certain felonies while possessing firearms. As such, this court would conclude that the armed violence statute is consistent with a long-standing tradition of similar regulations. Thus, even after applying the second prong of the *Bruen* analysis, this court would hold that the armed violence statute is facially constitutional.

¶ 30    We next consider defendant's argument that the armed violence statute is unconstitutional as applied to him. Defendant maintains that his act of possessing a small amount of cocaine while armed with a firearm was neither violent nor presented a credible threat to the safety of a specific person. See *Rahimi*, 602 U.S. at 700 ("Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others.").

¶ 31 As noted above, "an as-applied challenge depends on the particular facts and circumstances of the party." *Burns*, 2024 IL App (4th) 230428, ¶ 11 (citing *Rizzo*, 2016 IL 118599, ¶ 24). "Because as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 17 (citing *People v. Harris*, 2018 IL 121932, ¶ 39). Our supreme court has stated that

> " ' "[a] court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature." ' " *Rizzo*, 2016 IL 118599, ¶ 26 (quoting *People v. Mosley*, 2015 IL 115872, ¶ 47, quoting *John M.*, 212 Ill. 2d at 268).

However, our supreme court has also stated that when "[a]ll of the facts and circumstances to decide the defendant's claim *** are already in the record," the as-applied constitutional claim may be considered on appeal for the first time even without a prior evidentiary hearing. *People v. Holman*, 2017 IL 120655, ¶¶ 29-32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42.

¶ 32 We note that, here, defendant did not raise the as-applied challenge before the trial court. Accordingly, there was no evidentiary hearing on this specific issue. However, the evidence presented at the trial and sentencing hearing is sufficient for this court to review defendant's claim, given that the record includes facts surrounding the predicate felony offense. The State seemingly concedes this point, as it does not argue that the record is insufficient for this court to review defendant's claim. Thus, we consider defendant's claim.

12

¶ 33　In *Brooks*, 2023 IL App (1st) 200435, our colleagues in the First District followed *Bruen* in considering whether the armed habitual criminal statute was unconstitutional as applied to a defendant with nonviolent predicate offenses. The predicate offenses for the armed habitual criminal charge in *Brooks* were manufacture or delivery of " 'other amount of narcotics Schedule I and II' " and unlawful possession of a weapon by a felon. *Id.* ¶ 3. In applying the first step of the *Bruen* analysis, the First District concluded that the plain language of the second amendment covered the defendant's conduct of possessing a firearm. *Id.* ¶ 89.

¶ 34　Unlike *Brooks*, here, we have concluded that defendant's conduct of possessing a controlled substance while simultaneously possessing an operational firearm was not conduct protected under the second amendment. Accordingly, defendant's as-applied challenge fails under the first step of *Bruen* as well. See *Baker*, 2023 IL App (1st) 220328, ¶ 37 (concluding that the defendant, a convicted felon arguing that the UUWF statute was unconstitutional as applied to him, could not invoke *Bruen* because the test only applies to "laws that attempt[ ] to regulate the gun possession of 'law-abiding citizens' ").

¶ 35　Again, even assuming *arguendo* that defendant's conduct was protected under the second amendment, we would conclude that the State, here, demonstrated that the regulation is consistent with this nation's historical tradition of firearm regulation. In this regard, we find *Brooks* instructive, as that case also involved a nonviolent offender. In conducting the second step of the *Bruen* analysis, the First District noted that "both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society. " (Internal quotation marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶ 100. The First District concluded that "[s]ince the defendant in the instant case was twice convicted of a felony, albeit nonviolent ones, he is not a law-abiding

13

citizen, and the armed habitual criminal statute that prohibits his possession of firearms is constitutional as applied to him." *Id.* The First District went on to note as follows:

> "Even if we were to indulge the defendant and take the view adopted by the minority of historians that traditionally regulation of firearms possession was an effort to address a risk of dangerousness [citations], such that it would not apply to the defendant as a nonviolent felon, we would nonetheless find that the prohibition on firearm possession by convicted felons passes muster under historical analysis." *Id.* ¶ 101.

Thus, the First District concluded that the armed habitual criminal statute was not unconstitutional as applied to the defendant, a nonviolent felony offender. *Id.* ¶ 105.

¶ 36    We would find the reasoning set forth in *Brooks*'s application of the second step in the *Bruen* analysis applicable to defendant's as-applied challenge in the instant case. Although defendant's commission of the possession of a controlled substance offense was nonviolent, it demonstrated that he had a disrespect for legal norms of society. Thus, even after considering the specific facts and circumstances surrounding defendant's armed violence offense, this court would hold that the armed violence statute was constitutional as applied to defendant.

¶ 37    We acknowledge defendant's argument that "the historical evidence suggested that intoxicated people, instead of receiving a permanent ban on gun ownership, could not possess firearms temporarily while they were intoxicated, which is applicable to [his] case." We note, however, that this argument supports our conclusion that the armed violence statute is constitutional as applied to defendant. Notably, defendant was only prohibited from possessing a gun while he also possessed cocaine. Similar to the temporary prohibitions on those who were intoxicated, the prohibition, here, temporarily prohibits defendant from possessing a gun while he is also in possession of cocaine—a dangerous, intoxicating substance.

14

¶ 38    We also acknowledge defendant's citation of three federal cases in support of his position that the armed violence statute is unconstitutional as applied to him. We note that where, as with the constitutional claim at issue in the present case, the federal courts are not uniform in their interpretation, " 'we may elect to follow those decisions we believe to be better reasoned.' " *Stephens*, 2024 IL App (5th) 220828, ¶ 31 (quoting *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 35).

¶ 39    Defendant first cites *United States v. Connelly*, 117 F.4th 269, 282 (5th Cir. 2024), where the Fifth Circuit held that a federal statute prohibiting the possession of firearms and ammunition by an unlawful user of a controlled substance (18 U.S.C. § 922(g)(3) (2024)) was unconstitutional as applied to a defendant who was found in possession of multiple guns after she admitted to occasionally or habitually using marijuana. In assessing whether there was a justification for the regulation rooted in history and tradition, the Fifth Circuit concluded that section 922(g)(3), as applied to a non-intoxicated marijuana user, went much further than this nation's history and tradition allowed. *Connelly*, 117 F.4th at 278-79. While we disagree with the reasoning of *Connelly* and find better reasoned the federal court's decision in *United States v. Harrison*, No. 23-6028, 2025 WL 2452293, at *23 (10th Cir. Aug. 26, 2025) (concluding that the Fifth Circuit's "narrow reading failed to heed the Supreme Court's instruction that 'a "historical *twin*" is not required' " (emphasis in original) (quoting *Rahimi*, 602 U.S. at 701, quoting *Bruen*, 597 U.S. at 30), we also find the facts of *Connelly* distinguishable from the present case. Notably, in *Connelly*, the defendant admitted to using marijuana, and although unspecified drug paraphernalia was found in the home, no marijuana was found in the defendant's home. 117 F.4th at 272. In contrast, here, defendant was found in possession of the cocaine at the same time he was in possession of the gun. Moreover, *Connelly* involved marijuana—a substance our state has deemed legal to possess under

15

certain circumstances—and the present case involves cocaine—a substance that no state has found legal to possess. As such, we find *Connelly* distinguishable. We also note that, to the extent the facts of *Connelly* are not distinguishable, we decline to follow that decision.

¶ 40　We also do not find defendant's reliance on *United States v. Daniels*, 124 F.4th 967 (5th Cir. 2025), persuasive. In *Daniels*, the Fifth Circuit considered whether *Connelly* applied to a defendant charged under the same statute (18 U.S.C. § 922(g)(3) (2024)) "who was often intoxicated while transporting weapons," "admitted to using mari[j]uana roughly half the days of each month," and was found with "burnt," or used, marijuana in his truck while also possessing a loaded handgun and rifle. *Daniels*, 124 F.4th at 975. The Fifth Circuit acknowledged that it was "a closer case than *Connelly*" because the defendant in *Daniels* "routinely [drove] around town while intoxicated with loaded guns in his car." *Id.* Nevertheless, the Fifth Circuit found that the statute was unconstitutional as applied to the defendant because, according to the jury instructions, "the government's burden of proof was too low, as it was not required to convince a jury that [the defendant] was presently or even regularly intoxicated at the time of arrest." *Id.* at 975-76. We disagree with the reasoning of *Connelly*, as well as the reasoning of *Daniels*, and we decline to follow those decisions.

¶ 41　Lastly, we find defendant's reliance on *Range v. Attorney General United States*, 124 F.4th 218 (3d Cir. 2024), entirely misplaced. In *Range*, a putative gun purchaser filed a declaratory action against the Attorney General, among others, seeking a declaration that a federal statute prohibiting him from owning a weapon because of his 1995 Pennsylvania conviction for making a false statement to obtain food stamps violated his second amendment rights. *Id.* at 222-23. We find the *Range* defendant's act of making a false statement to obtain food stamps entirely different

16

from defendant's act of possessing cocaine in the present case. Thus, we do not find *Range* persuasive in our consideration of the issue raised in the present case.

¶ 42    In light of the foregoing, we hold that the armed violence statute is not unconstitutional on its face or as applied to defendant, where defendant's conduct was not protected under the second amendment.

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, we affirm the judgment of the circuit court of Jefferson County.

¶ 45    Affirmed.

*People v. Smith*, 2025 IL App (5th) 230656

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Jefferson County, No. 22-CF-403; the Hon. Jerry E. Crisel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Thomas Joseph Skelton, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Sean M. Featherstun, State's Attorney, of Mt. Vernon (Patrick Delfino, Patrick D. Daly, and Jennifer Camden, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |