NOTICE

Decision filed 12/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230238

NO. 5-23-0238

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-482 |
| | ) | |
| ARNEZ McCORKLE, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court, with opinion.
Justice Moore concurred in the judgment and opinion.
Justice Sholar specially concurred, with opinion.

**OPINION**

¶ 1 Following a negotiated plea, the defendant, Arnez McCorkle, was convicted of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(D) (West 2016)), having previously been adjudicated a delinquent minor under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2016)), and unlawful possession of firearm ammunition (720 ILCS 5/24-3.1(a)(2) (West 2016)). The defendant subsequently filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). He appeals from the trial court's judgment dismissing his petition. For the reasons that follow, we affirm.

1

¶ 2                                    I. BACKGROUND

¶ 3     In April 2017, about six weeks after he turned 18, the defendant was charged with AUUW, unlawful possession of a firearm, and unlawful possession of firearm ammunition. The AUUW count was predicated on the defendant's 2014 juvenile delinquent adjudication for criminal damage to property greater than $300, an act that would have been a felony if committed by an adult.

¶ 4     On May 16, 2017, the defendant entered a negotiated plea of guilty to one count of AUUW and one count of unlawful possession of firearm ammunition. In exchange for his guilty plea, the State agreed to a sentence of 30 months of probation and the dismissal of count II, unlawful possession of a firearm (720 ILCS 5/24-3.1(a)(2) (West 2016)). Additionally, as part of the plea agreement, the defendant would serve 50 hours of community service, pay court costs and probation fees, and the firearm recovered by police would be destroyed.

¶ 5     According to the factual basis presented by the State, on or about April 12, 2017, at about 1:31 a.m., law enforcement conducted a traffic stop of a vehicle based on failure to signal a turn and found that the defendant was the driver and registered owner of the vehicle. There were also two passengers under the age of 21 in the defendant's vehicle. The officers saw in plain view a loaded revolver and box of ammunition in an empty space in the dashboard of the defendant's car, where the radio commonly would be located. The defendant disclaimed any knowledge of these items in plain view in his car. The officers had the defendant and his passengers exit the vehicle. The items were seized, and the defendant was arrested.

¶ 6     After finding a factual basis and ascertaining that the guilty plea was knowing and voluntary, the trial court accepted the defendant's plea, dismissed the charge of unlawful possession of a firearm pursuant to the plea, and imposed the agreed sentences on each count of

30 months' probation plus additional negotiated terms. The defendant was released from custody on June 1, 2017. Three weeks later, he was charged with armed robbery and unlawful possession of a weapon by a felon in Madison County, Illinois, case No. 2017-CF-1763, based on allegations that he committed armed robbery with a firearm on June 19, 2017. The State filed a petition to revoke his probation in the present case.

¶ 7    In December 2017, the State amended its petition to revoke probation, alleging that the defendant had been charged with mob action in Madison County, Illinois, based on allegations that he committed this offense in November 2017. In August 2019, the court terminated the defendant from probation, as he had been sentenced to 12 years in prison in Madison County case No. 2017-CF-1763.

¶ 8    On February 13, 2023, the defendant filed a *pro se* section 2-1401 petition for relief from judgment, almost six years after his sentence was imposed. Citing *People v. Aguilar*, 2013 IL 112116, the defendant argued that his AUUW conviction violated his second amendment right to bear arms because the legislature could not prohibit someone from possessing an uncased, loaded, and immediately accessible weapon. It does not appear from the record that a hearing was held on the defendant's section 2-1401 petition.

¶ 9    In its written order, the trial court noted that section 2-1401 petitions must be filed within two years of the order of judgment, although the trial court recognized there is an exception to this time limitation for void judgments. See 735 ILCS 5/2-1401(c) (West 2022). The trial court denied the defendant's petition, reasoning that *Aguilar* held that section 24-1.6(a)(1), (a)(3)(A) of the AUUW was unconstitutional (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2016)), not the section under which the defendant was convicted. Thus, because Illinois courts had not held that section 24-1.6(a)(1), (a)(3)(D) was unconstitutional, the trial court found that the defendant's conviction

was not void pursuant to *Aguilar*. The trial court concluded that the defendant failed to show the voidness exception to the two-year limitation period applied to his petition and determined there was no valid basis to excuse the delay in filing. This appeal followed.

¶ 10                                                    II. ANALYSIS

¶ 11     On appeal, the defendant abandons the arguments raised in his section 2-1401 petition. Instead, he argues that, following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), section 24-1.6(a)(1), (a)(3)(D) of the AUUW statute under which he was convicted violates the second amendment to the United States Constitution (U.S. Const., amend. II). Specifically, the defendant argues that because there is no historical analogue for a categorical ban on the right to bear arms based solely on a prior juvenile adjudication, section 24-1.6(a)(1), (a)(3)(D) is both facially unconstitutional and unconstitutional as applied to him.

¶ 12     While the defendant did not raise this argument at the court below, as a general rule, a constitutional challenge to a criminal statute may be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32. A statute that is later declared facially unconstitutional and void *ab initio* was constitutionally infirm from the moment of its enactment and, thus, unenforceable. *Id.* "[A]n as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner. Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37. The State concedes that the record contains the facts and circumstances relevant to this claim where the defendant's as-applied challenge is based on the nature of the prior adjudication of delinquency upon which his AUUW conviction was predicated. See *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 57 (as-applied challenge not raised in trial court could be considered on appeal where it

4

was based on facts in the record and no relevant facts were missing). Accordingly, we will address the defendant's facial and as-applied challenges to the statute.

¶ 13   The defendant maintains that since his conviction, the United States Supreme Court has determined that a new test applies when evaluating the constitutionality of firearms restrictions under the second amendment. See *Bruen*, 597 U.S. at 17. In *Bruen*, the United States Supreme Court held that if the conduct at issue falls within the scope of the second amendment, namely the defendant's right to keep and bear arms, the defendant's conduct is presumptively protected by the constitution. *Id.* In order to justify a law regulating firearm possession, the State must show that it is "consistent with this Nation's historical tradition of firearm regulation." *Id.* If the State meets its burden, then the defendant's conduct is outside the scope of the second amendment. See *id.* at 17-25. The defendant argues that under the new test articulated in *Bruen*, the State cannot show that the prohibition found in section 24-1.6(a)(1), (a)(3)(D) on the possession of a weapon by any person adjudicated a delinquent minor has a historical analogue that would support its constitutionality under the second amendment. The defendant asks this court to find section 24-1.6(a)(1), (a)(3)(D) facially unconstitutional and unconstitutional as-applied to him and vacate his AUUW conviction.

¶ 14   The State counters that it is constitutional, both facially and as applied to the defendant, to prohibit the possession of firearms by a person who previously was adjudicated delinquent for an act that would have been a felony if committed by an adult. The State notes that at the time of his AUUW conviction, the defendant was not a felon. However, implicit in the parties' arguments and cases they cite on appeal, the defendant may be compared to a person convicted of a felony for purpose of the *Bruen* analysis.

5

¶ 15 Whether a statute is unconstitutional is a question of law, reviewable *de novo*. *People v. Davis*, 2014 IL 115595, ¶ 26. To overcome the strong presumption of constitutionality, "the party challenging [a] statute must clearly establish that it violates the constitution." (Internal quotation marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶ 64. "A reviewing court has 'a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can.' " *Id.* (quoting *People v. Graves*, 207 Ill. 2d 478, 482 (2003)).

¶ 16 After the appeal was fully briefed, our supreme court issued its opinion in *People v. Thompson*, 2025 IL 129965. In *Thompson*, the supreme court determined that the issue properly before it was "the constitutionality of the AUUW statute's enforcement of the [Firearm Concealed Carry Act] licensing regime, which incorporates [Firearm Owners Identification Card Act] licensure." *Id.* ¶ 17. The *Thompson* court affirmed the defendant's conviction under the section of the AUUW which prohibits the possession of an "uncased, loaded, and immediately accessible" firearm in a vehicle without a valid concealed carry license. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2020). The State filed a motion to cite *Thompson*, 2025 IL 129965, ¶ 3, as additional authority, which we granted. In its motion, the State argues that *Thompson* is relevant to the instant case because it held that the statute's ban on unlicensed public carriage, coupled with the requirements to obtain concealed-carry licenses and FOID cards, is not facially unconstitutional under the second amendment analysis set forth in *Bruen*, 597 U.S. 1. See *Thompson*, 2025 IL 129965, ¶ 3; see also 430 ILCS 66/1 *et seq.* (West 2020); 430 ILCS 65/0.01 *et seq.* (West 2020). However, *Thompson* is not dispositive as it does not implicate the section of the AUUW statute under which the defendant was convicted.

6

¶ 17                          A. Facial Challenge

¶ 18    "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount." *Davis*, 2014 IL 115595, ¶ 25. "A statute is facially unconstitutional only if there are no circumstances in which the statute could be validly applied." *Id.* In a facial challenge, "[t]he particular facts related to the challenging party are irrelevant." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 19    The second amendment to the United States Constitution provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 592, 635 (2008), the United States Supreme Court interpreted the second amendment as codifying a preexisting individual right, unconnected with service in the militia, to keep and bear arms for "law-abiding, responsible citizens to use arms in defense of hearth and home." Two years later, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court extended the second amendment's individual right to keep and bear arms to the states under the fourteenth amendment (U.S. Const., amend. XIV).

¶ 20    Following *Heller* and *McDonald*, courts developed a "two-step" framework for analyzing second amendment challenges to firearms regulations that combined history with means-end scrutiny. *Bruen*, 597 U.S. at 17. The *Bruen* Court explained that when evaluating the constitutionality of a statute, a court first must determine whether the plain text of the second amendment covers an individual's conduct. *Id.* at 24. If it does, then the constitution presumptively protects that conduct, and the government must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation. *Id.* Only then may a court conclude that the individual's conduct falls outside the second amendment. *Id.*

¶ 21 The State contends that under the *Bruen* analysis, the defendant was not protected by the second amendment, arguing that, like a convicted felon, a person who was adjudicated delinquent for an act that would be a felony if committed by an adult is not a "law-abiding citizen" protected by the second amendment. In support of its argument, the State points out that the *Bruen* Court noted that the petitioners in that case were, as "ordinary, law-abiding, adult citizens," "part of 'the people' whom the Second Amendment protects." *Id.* at 15, 31-32. However, the State recognizes that reviewing courts have disagreed about whether a person's status as a non-law-abiding citizen is relevant at the plain-text stage of the *Bruen* analysis.

¶ 22 Since the Supreme Court's *Bruen* decision, two lines of cases have emerged as Illinois courts have endeavored to faithfully apply the *Bruen* analysis. At least two panels of the First District have determined that *Bruen* does not apply since felons are not "law-abiding citizens" covered by the second amendment. (Internal quotation marks omitted.) *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 30. In contrast, other panels of the First District have followed the approach taken in *Brooks*, 2023 IL App (1st) 200435, ¶ 89, which determined that *Bruen*'s newly announced analytical framework requires reviewing courts to first examine a defendant's conduct, not the status of the person performing the conduct. Although we find *Brooks* persuasive, we are mindful that two panels of this district disagree with this approach, finding that felons do not fall "into the category of 'the people' protected by the second amendment." (Internal quotation marks omitted.) See *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25; *People v. Gordon*, 2025 IL App (5th) 240359-U, ¶ 21. We respectfully disagree. That is not to say that the defendant's status is irrelevant; rather, it is more properly evaluated under the second prong of the *Bruen* analysis in which we must assess whether the challenged

8

statute is consistent with the nation's historical tradition of firearm regulation. See *Brooks*, 2023 IL App (1st) 200435, ¶ 89.

¶ 23 The defendant maintains the State cannot show that the prohibition found on the possession of a weapon by any person adjudicated a delinquent minor has a historical analogue that would support its constitutionality under the second amendment. The State counters that the challenged subsection of the AUUW statute is relevantly similar to historical regulations disarming felons. The State points out that Illinois courts have ruled that statutes disarming felons satisfy the historical analysis required by *Bruen*. See, *e.g.*, *People v. Stephens*, 2024 IL App (5th) 220828, ¶¶ 37-39 (rejecting facial challenge to unlawful use of a weapon by a felon (UUWF) statute under the second prong of *Bruen*); *Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105 (rejecting as-applied challenge to the armed habitual criminal (AHC) statute). Thus, the State argues, the challenged subsection of the AUUW statute is consistent with a long-standing historical tradition of similar regulation.

¶ 24 As the State notes, in *Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105, the First District rejected an as-applied challenge to the AHC statute, finding that founding-era historical records and United States Supreme Court precedent provided historical underpinnings for it. The First District surveyed the history of restrictions on the possession of firearms starting in England in the 1600s through colonial America and the founding era, concluding that restrictions on previously convicted felons' possession of firearms are consistent with this historical tradition. See *id.* ¶¶ 91-98 (collecting authority). The *Brooks* court found historical support for the founders' understanding that "crimes committed, whether dangerous or not, justified disarmament." (Internal quotation marks omitted.) *Id.* ¶ 95. The court noted evidence that "[f]ounding-era criminal punishments also demonstrate[d] the widespread acceptance of the legislatures' authority to disarm

9

felons." *Id.* ¶ 96 (collecting authority). The *Brooks* court found that the AHC statute was analogous to those regulations, as it had been enacted to address " 'the threat of violence that arises when repeat offenders possess firearms.' " *Id.* ¶ 103 (quoting *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27). The State also points out that in *Stephens*, 2024 IL App (5th) 220828, ¶¶ 37-39, this court rejected a facial challenge to the UUWF statute, finding it was consistent with the nation's historical tradition of firearm regulation.

¶ 25    We find the State's arguments persuasive. Accordingly, we conclude that the challenged section of the AUUW is facially constitutional under the second amendment of the United States Constitution.

¶ 26                                    B. As-Applied Challenge

¶ 27    "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *Thompson*, 2015 IL 118151, ¶ 36. The defendant argues that his conviction for AUUW was predicated on a prior criminal damage to property adjudication, which is not a crime that indicates extreme dangerousness such as to justify permanent disarmament. The defendant argues that because his prior conviction does not fall within a category of offenses for which there is a historical analogue, section 24-1.6(a)(1), (a)(3)(D) cannot be constitutionally applied to him.

¶ 28    The State responds that the challenged section of the AUUW statute bars possession of a firearm by a person who was adjudicated delinquent for an act that would be a felony if committed by an adult. The State maintains that, based on case law discussing the history of disarming felons, the challenged subsection of the AUUW statute is constitutional as applied to the defendant. We find the State's argument well-reasoned. In *McDonald*, the United States Supreme Court reiterated that the holding in *Heller* "did not cast doubt on such longstanding regulatory measures as

10

prohibitions on the possession of firearms by felons." (Internal quotation marks omitted.) *McDonald*, 561 U.S. at 786; see *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (noting that *Heller* recognized that "many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful' " (quoting *Heller*, 554 U.S. at 626, 627 n.26)). Thus, the defendant's argument fails. We conclude that the challenged section of the AUUW is constitutional as applied to the defendant.

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, we find that the challenged section of the AUUW is constitutional on its face and as applied to the defendant. Accordingly, we affirm the trial court's dismissal of the defendant's section 2-1401 petition for relief from judgment.

¶ 31    Affirmed.

¶ 32    JUSTICE SHOLAR, specially concurring:

¶ 33    While I concur in the ultimate judgment, I would apply the *Bruen* analysis in accordance with this court's decisions in *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25 (finding the defendant was not a protected person under the second amendment), and *People v. Gordon*, 2025 IL App (5th) 240359-U, ¶ 22 (same).

*People v. McCorkle*, 2025 IL App (5th) 230238

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 17-CF-482; the Hon. Julie K. Katz, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Ellen J. Curry, and Jennifer M. Lassy, of State Appellate Defender's Office, of Mt. Vernon, for appellant. |
| **Attorneys for Appellee:** | James A. Gomric, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Jennifer Camden, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |