NOTICE
Decision filed 02/03/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250371-U

NO. 5-25-0371

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 22-CF-273 |
| | ) | |
| BRIAN J. FERRELL, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Defendant failed to establish that the unlawful possession of a weapon by a felon statute was facially unconstitutional under the United States Constitution.

¶ 2   Following a bench trial in the circuit court of Champaign County, defendant, Brian J. Ferrell, was found guilty of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to seven years in prison. Defendant filed petitions for relief from judgment and for a certificate of innocence, challenging the constitutionality of his conviction following the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The State subsequently filed motions to dismiss, which the trial court granted. Defendant appeals, arguing that the UPWF statute facially violates his second amendment

1

right to carry a handgun under the United States Constitution (U.S. Const., amend. II) following *Bruen*, 597 U.S. 1, rendering his conviction void. For the following reasons, we affirm.

¶ 3                                I. Background

¶ 4     On March 7, 2022, the State charged defendant by six-count information with five counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2020)) (counts I-V), all Class X felonies; and one count of UPWF (*id.* § 24-1.1(a)) (count VI), a Class 2 felony. In support, the State alleged that defendant personally discharged a firearm on September 11, 2021, that proximately caused (counts I-IV) or caused (count V) the death of the victim, Kendall Jones. Relevant to the issue on appeal, the State also alleged that defendant, a felon, previously convicted of the unlawful delivery of a controlled substance (cocaine) in Champaign County (case No. 2003-CF-731), a Class 2 felony, knowingly possessed a firearm in the commission of the offenses at issue.

¶ 5     At defendant's three-day bench trial held on August 12, 13, and 14, 2024, the trial court heard evidence that the victim, Jones, arrived at Mary Davis's home on September 10, 2021, between 4 p.m. and 5 p.m. Later in the evening, Jones invited several individuals to Davis's home, including his cousin, Shantell Brown, and Tempest Lawrence. Testimony demonstrated that Davis and Lawrence did not get along prior to September 10, 2021. At some point, Lawrence physically shoved Davis, prompting Jones to intervene. Lawrence then left shortly thereafter. While leaving, Lawrence stated to Davis, "I'll be back."

¶ 6     Sometime in the early morning hours of September 11, 2021, Lawrence returned to Davis's home in a white vehicle with Jonathan Brumfield driving the vehicle and defendant in the passenger seat. When the white vehicle arrived, Brumfield drove the vehicle into the roundabout to turn around. Brumfield then parked the car outside of Davis's home near the sidewalk. Lawrence

2

exited the vehicle, knocked on Davis's front door, and spoke to Davis. As Lawrence walked back to the white vehicle, Jones exited the home and spoke to Lawrence near the sidewalk. At some point thereafter, an exchange of gunfire took place between Brumfield, Jones, and defendant, resulting in Jones's death. Defendant, testifying on his own behalf, admitted that he fired his .40-caliber firearm in Jones's direction, firing a total of 12 .40-caliber rounds from his firearm. After Jones fell to the ground, defendant, Brumfield, and Lawrence sped away. Davis then performed CPR on Jones until emergency personnel arrived. After considering the evidence, the trial court found defendant guilty of UPWF but not guilty on all five counts of first degree murder. The court subsequently sentenced defendant to seven years in prison followed by one year of mandatory supervised release.

¶ 7 On December 17, 2024, defendant filed *pro se* petitions for relief from judgment and for a certificate of innocence, arguing that the UPWF statute was facially unconstitutional in violation of his second amendment right. In response, the State filed motions to dismiss defendant's *pro se* petitions. On January 15, 2025, the trial court entered a docket entry providing defendant the opportunity to postmark a reply to the State's motions to dismiss on or before March 21, 2025.

¶ 8 On April 4, 2025, the trial court entered orders granting the State's motions to dismiss, indicating that defendant never replied to the State's motions to dismiss. In granting the State's motion to dismiss defendant's petition for relief from judgment, the court rejected defendant's argument that the UPWF statute was unconstitutional, stating that federal and Illinois courts routinely held that felons were not entitled to possession of weapons and that such statutes are constitutional. With regard to defendant's petition for a certificate of innocence, the court reasoned that defendant could not meet the statutory requirements provided his judgment had not been

3

reversed, vacated, or dismissed. Defendant filed a timely notice of appeal on May 1, 2025, and an amended notice of appeal on May 29, 2025.

¶ 9                                    II. Analysis

¶ 10    Relying on the Supreme Court's decision in *Bruen*, defendant argues on appeal that the UPWF statute violates the second amendment to the U.S. Constitution on its face. According to defendant, "[b]ecause possession of a personal firearm is a core protected right belonging to Americans, possession of a handgun—like [defendant's] possession in 2021—is presumptively lawful." Defendant further argues that the State cannot provide sufficient historical practice of American firearm regulation analogous to the UPWF statute, which imposes a total and permanent ban on individuals with any prior felony conviction in any circumstance followed by extensive incarceration as punishment. As such, defendant asserts that his conviction is void. We cannot agree.

¶ 11    "All statutes are presumed to be constitutional" (*People v. Funches*, 212 Ill. 2d 334, 339 (2004)), and a party challenging the constitutionality of the statute " 'carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional.' " *People v. Rizzo*, 2016 IL 118599, ¶ 23 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 90). "A facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *People v. Thompson*, 2015 IL 118151, ¶ 36. "Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006). " '[S]o long as there exists a situation in which a statute could be validly applied, a facial challenge must fail.' " *People*

4

*v. Huddleston*, 212 Ill. 2d 107, 145 (2004) (quoting *Hill v. Cowan*, 202 Ill. 2d 151, 157 (2002)). Whether a statute is unconstitutional is a question of law, which we review *de novo*. *People v. Davis*, 2014 IL 115595, ¶ 26.

¶ 12     The second amendment to the U.S. Constitution provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "The United States Supreme Court has 'recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun' inside and outside the home 'for self-defense.' " *People v. Burns*, 2024 IL App (4th) 230428, ¶ 14 (quoting *Bruen*, 597 U.S. at 8-9, and citing *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)). In *Bruen*, the Supreme Court set out the following two-part test for determining whether laws regulating conduct protected by the second amendment were valid under the Constitution:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24.

Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 13    In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered the analytical framework for second amendment claims following its decision in *Bruen*. In applying that analytical framework, the Supreme Court upheld a firearm restriction against an individual with a domestic violence restraining order. *Id.* at 699-700. The individual subject to the restraining order was found to pose " 'a credible threat to the physical safety' " of his girlfriend and child. *Id.* at 688-89. The Supreme Court conducted a historical analysis to assess whether the firearm restriction was permissible. *Id.* at 693-700. The Supreme Court ultimately found the restriction constitutional but rejected the government's argument that the individual was not protected under the second amendment because he was not " 'responsible,' " holding that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 701-02.

¶ 14    This court recently applied *Bruen* in considering a defendant's facial second amendment challenge to the unlawful use of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2022)). *People v. Stephens*, 2024 IL App (5th) 220828. In addressing the State's arguments that the defendant was not covered by the plain text of the second amendment and that convicted felons fell outside the coverage of the second amendment because they were not law-abiding, responsible persons (*id.* ¶ 33), this court acknowledged that several other districts of the appellate court determined that "the protections afforded by the second amendment apply only to law-abiding citizens." *Id.* ¶ 28 (citing *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 22; *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28 ("*Bruen* strongly suggests the test only applies when a regulation impacts a law-abiding citizen's ability to keep and bear arms"); *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that the *Bruen* majority and concurrences repeated the phrase "law-abiding" 18 times); *People v. Burns*, 2015 IL 117387, ¶ 41 (Garman, C.J., specially

concurring, joined by Thomas, J.) ("the right secured by the second amendment is held by 'law-abiding, responsible citizens' and is not unlimited" (quoting *Heller*, 554 U.S. at 635))). This court noted, however, that a different panel from the First District held that felons were not excluded by the plain language of the second amendment under the first prong of *Bruen* and that a defendant's felony conviction should be evaluated under the historical tradition analysis set out in the second prong of *Bruen*. *Stephens*, 2024 IL App (5th) 220828, ¶ 29 (citing *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, *pet. for leave to appeal pending*, No. 130153 (filed Oct. 30, 2023), and *Travis*, 2024 IL App (3d) 230113, ¶ 26).

¶ 15    This court further noted that federal courts were split on "whether the phrase 'the people' as used in the second amendment categorically exclude[d] felons." *Id.* ¶ 30 (citing *United States v. Head*, 734 F. Supp. 3d 806, 814-15 (N.D. Ill. 2024)). This court recognized that some federal courts assumed, without deciding, that felons were among "the people" and proceeded to the second prong of the *Bruen* analysis (*United States v. Stringer*, 742 F. Supp. 3d 840, 852-53 (C.D. Ill. 2024); *United States v. Wigfall*, 677 F. Supp. 3d 791, 796 (N.D. Ind. 2023)), while other federal courts found that felons were not protected under the plain text of the second amendment (*Stephens*, 2024 IL App (5th) 220828, ¶ 30 (citing *United States v. McKay*, No. 23 CR 443, 2024 WL 1767605, at *2 (N.D. Ill. Apr. 24, 2024), and *United States v. Hall*, No. 22 CR 665, 2023 WL 8004291, at *2 (N.D. Ill. Nov. 17, 2023))). This court noted that other federal courts determined that felons were protected under the plain text of the second amendment. *Stephens*, 2024 IL App (5th) 220828, ¶ 30 (citing *United States v. Ware*, 673 F. Supp. 3d 947, 956 (S.D. Ill. 2023), and *United States v. Agee*, No. 1:21-CR-00350-1, 2023 WL 6443924, at *4 (N.D. Ill. Oct. 3, 2023)).

¶ 16    This court followed the reasoning of the federal court's decision in *Ware* and concluded that the defendant, despite his status as a felon, fell "into the category of 'the people' protected by

7

the second amendment." *Id.* ¶ 33. However, this court noted that "the defendant's status as a felon [was not] irrelevant; rather, it [was] more properly evaluated under the second prong of the *Bruen* analysis." *Id.* ¶ 34. This court ultimately concluded "that section 24-1.1(a) [was] consistent with this nation's historical tradition of firearm regulation" and held that the statute was constitutional on its face under the second amendment. *Id.* ¶ 39.

¶ 17 We respectfully disagree with the portion of *Stephens* holding that felons fall "into the category of 'the people' protected by the second amendment." *Id.* ¶ 33. Instead, we follow our recent decision in *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25, holding that felons are not protected under the plain text of the second amendment. Despite acknowledging that the defendant was not considered a " 'felon' " at the time the State charged him, this court concluded that the federal court decisions holding that a felon is not a law-abiding citizen protected under the second amendment extend to a defendant who is in the process of committing a felony while simultaneously possessing an operational firearm. *Id.* (citing see *McKay*, 2024 WL 1767605, at *3; *Hall*, 2023 WL 8004291, at *2-4; *Kelley*, 2024 IL App (1st) 230569, ¶ 22; *Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28; *Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Arrington*, 2025 IL App (5th) 230344-U, ¶ 43).

¶ 18 Illinois law makes it "unlawful for a person to knowingly possess *** any firearm *** if the person has been convicted of a felony." 720 ILCS 5/24-1.1(a) (West 2020). Here, it is undisputed that this statute applies to defendant—a convicted felon—given defendant was previously convicted of the unlawful delivery of a controlled substance (cocaine) in Champaign County (case No. 2003-CF-731), a Class 2 felony. In the instant offense, defendant himself admitted at his bench trial that he was at the scene of the shooting and that he recognized Jones outside Davis's house prior to the shooting. Defendant also admitted that he possessed a .40-caliber

firearm in the morning hours of September 11, 2021, and that he fired 12 .40-caliber rounds from his firearm in the direction of Jones. As such, defendant is not a law-abiding citizen and thus not protected under the second amendment. In light of our holding that defendant is not a law-abiding citizen who is protected under the second amendment, we need not address the second step of the analysis in *Bruen*. Accordingly, for the reasons discussed, we reject defendant's argument that the UPWF violates the second amendment to the U.S. Constitution on its face.

¶ 19                                        III. Conclusion

¶ 20     For the foregoing reasons, we affirm the judgment of the circuit court of Champaign County.


¶ 21     Affirmed.