NOTICE

Decision filed 12/12/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231140-U

NO. 5-23-1140

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 17-CF-1405 |
| | ) | |
| DANIEL C. HUDSON, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justice Hackett concurred in the judgment.
Justice McHaney specially concurred.

**ORDER**

¶ 1    *Held*: The defendant failed to establish that the armed habitual criminal statute was facially unconstitutional, or as applied to the defendant, under the United States Constitution and the Illinois Constitution.

¶ 2    The defendant, Daniel Hudson, appeals after the denial of his *pro se* postconviction petition. On appeal, he claims that we must vacate his conviction for the offense of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)) because the AHC statute violates the defendant's individual right to bear arms under the United States Constitution and Illinois Constitution, raising both a facial and as-applied challenge. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    On September 27, 2017, the defendant was charged by information with two counts of the offense of armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)), two counts of

1

unlawful possession of weapons by felons (720 ILCS 5/24-1.1(a) (West 2016)), and one count of unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(e) (West 2016)). The defendant pleaded guilty to one count of AHC and, in exchange for the guilty plea, the State dismissed the remaining four counts.

¶ 5    On April 25, 2019, the circuit court held a hearing on the plea agreement. The State presented a factual basis, which included that the defendant was hiding contraband on the vacant property next to his house. Law enforcement responded to an anonymous tip regarding the contraband and found a trash bag in the front of the vacant residence containing a Ruger .44 Magnum Revolver that was loaded with six bullets. The defendant's DNA was identified on the revolver. Law enforcement also found on the front porch a black t-shirt wrapped around a .38-caliber special revolver with six bullets, and the defendant's DNA was found on the t-shirt. On that same front porch, a cardboard box with cannabis packaging and a document with the defendant's name written on it was recovered as well. There was a latent print on the packaging that matched the defendant's inked print. The State further identified that the defendant had previous convictions in Macon County including possession of a controlled substance with intent to deliver and possession of cannabis with intent to deliver. The circuit court accepted the plea agreement.

¶ 6    A presentence report was prepared prior to a sentencing hearing. The report included Macon County felonies, a charge in "US Federal Court" for "Distribution of Crack Cocaine," a Sangamon County felony for possession of a controlled substance, and several misdemeanor charges. One of the defendant's Macon County felonies listed on the report, a case from 1997, included a charge for "Felon Poss/Use Weapon/Firearm." On July 11, 2019, the defendant was

sentenced to eight years in the Illinois Department of Corrections for the offense of AHC (720 ILCS 5/24-1.7(a) (West 2016)). The defendant did not file a direct appeal.

¶ 7    Several years later, on August 7, 2023, the defendant filed a *pro se* postconviction petition. The defendant argued that the circuit court should have suppressed the firearm evidence, his AHC conviction violated the "Safe-T-Act" and *People v. McClendon*, 2022 IL App (1st) 163406, and that his attorney was ineffective. The defendant did not provide further explanation or any supporting documentation.

¶ 8    On October 11, 2023, the circuit court entered a formal written order denying the defendant's *pro se* postconviction petition at the first stage and noted that the defendant had not provided any supporting documents or affidavits. The circuit court indicated that it had reviewed the "Safe-T Act" and found no basis for vacating the defendant's AHC conviction. The facts presented in *McClendon*, 2022 IL App (1st) 163406, were found to be distinguishable from this case. The circuit court found that the defendant had not stated a gist of a constitutional claim, and the defendant's petition was frivolous and patently without merit. This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, the defendant does not challenge the dismissal of the *pro se* postconviction petition based on any reason set forth by the circuit court. Rather, the defendant argues that his AHC conviction violated his individual right to bear arms under the United States Constitution and the Illinois Constitution, raising both a facially and as-applied challenge. The defendant acknowledges that he did not raise these issues in a motion to withdraw his plea, on direct appeal, or in the *pro se* postconviction proceeding.

¶ 11    Generally, where a defendant fails to raise an issue in a postconviction petition, the defendant may not raise an issue for the first time on review from a dismissal of the petition. *People*

3

*v. Jones*, 211 Ill. 2d 140, 148 (2004). However, a constitutional challenge to a criminal statute may be raised at any time. *People v. Wright*, 194 Ill. 2d 1, 23 (2000).

¶ 12    "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. A defendant must present an as-applied constitutional challenge before the circuit court and develop the record with specific facts and circumstances relevant to his claim. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 57. If the record contains facts and circumstances to decide the defendant's claim, then the issue may be raised and reviewed for the first time on appeal. *Brooks*, 2023 IL App (1st) 200435, ¶ 57.

¶ 13    "In contrast, a facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36. A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 13. All statutes carry a strong presumption of constitutionality and the party making the challenge must clearly establish its invalidity to overcome this presumption. *People v. Mosley*, 2015 IL 115872, ¶ 22. "Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity." *People v. Rizzo*, 2016 IL 118599, ¶ 23. If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so. *Rizzo*, 2016 IL 118599, ¶ 24. The question of whether a statute is constitutional is reviewed *de novo*. *People v. Aguilar*, 2013 IL 112116, ¶ 15.

¶ 14    We first consider the defendant's facial challenge of the AHC under the United States Constitution before addressing whether the record supports the defendant's as-applied challenge.

4

The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), recognized that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. *Bruen* announced a two-part analysis for review of laws affecting the right to bear arms, and the standard for applying the second amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 24.

Illinois courts have concluded that "the two-part process requires us to determine (1) whether defendant's conduct falls within the plain text of the second amendment and, if so, (2) whether there is a justification for the regulation rooted in history and tradition." *People v. Travis*, 2024 IL App (3d) 230113, ¶ 24.

¶ 15    *Bruen* referenced the United States Supreme Court decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), which recognized that "the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8-9. *Bruen* agreed that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. Courts have relied on *dicta* in *Heller* and in *Bruen* as evidence that people with felony convictions may be categorically excluded from the second amendment's protections and found that the second amendment right belongs to "law-abiding" citizens. See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (finding that *Bruen*

5

made it clear that its test applied only to laws that attempted to regulate the gun possession of "law-abiding citizens" where the phrase was repeated 18 times in the majority opinion and concurrence).

¶ 16     We recognize that different panels of this court have disagreed about whether felons fall within the scope of the second amendment. *Travis*, 2024 IL App (3d) 230113, ¶ 26. We recently considered the *Bruen* decision in *People v. Stephens*, 2024 IL App (5th) 220828, and whether a facial second amendment challenge applied to the unlawful use of a weapon by a felon (UUWF) statute (720 ILCS 5/24-1.1(a) (West 2022)). In *Stephens*, we followed the reasoning in a federal court decision in *United States v. Ware*, 673 F. Supp. 3d 947, 956 (S.D. Ill. 2023), and concluded that the defendant fell "into the category of 'the people' protected by the second amendment," regardless of his status as a felon. *Stephens*, 2024 IL App (5th) 220828, ¶ 33. The defendant's argument aligns with the *Stephens* decision where he argues that his possession of a firearm is protected by the plain text of the second amendment where the "law-abiding citizens" distinction defies the plain language of the second amendment.

¶ 17     *Stephens*, however, did not ignore the defendant's status as a felon and focused on the defendant's status as a felon under the second prong of the *Bruen* analysis. *Stephens*, 2024 IL App (5th) 220828, ¶ 34. *Stephens* ultimately found section 24.1.1 of the UUWF statute to be constitutional on its face under the second amendment where "the State has met its burden of showing that section 24-1.1(a) is consistent with this nation's historical tradition of firearm regulation." *Stephens*, 2024 IL App (5th) 220828, ¶ 39.

¶ 18     We additionally consider *Range v. Attorney General United States*, 124 F.4th 218 (3d Cir. 2024), as we granted the defendant's motion to cite additional authority after this appeal was fully briefed. In *Range*, a putative gun purchaser filed a declaratory action against the Attorney General, among others, seeking a declaration that a federal statute prohibiting him from owning a weapon

6

because of his 1995 Pennsylvania conviction for making a false statement to obtain food stamps violated his second amendment rights. *Range*, 124 F.4th at 222-23. *Range* found that the defendant remained among "the people" even though he had a 1995 false statement conviction. *Range*, 124 F.4th at 228. "We are not bound to follow decisions by federal courts other than the United States Supreme Court, though such decisions may be considered persuasive authority." *People v. Boss*, 2025 IL App (1st) 221855, ¶ 34. We find the act of making a false statement to obtain food stamps entirely different from the defendant's criminal history of state and federal drug-related convictions and an unlawful use or possession of a weapon by a felon conviction, and do not find *Range* persuasive.

¶ 19     We also recently considered the *Bruen* analysis in *People v. Smith*, 2025 IL App (5th) 230656, ¶ 25, and determined that the federal and appellate court decisions which held that "felons are not protected under the plain text of the second amendment" were better reasoned decisions. *Smith* found that "a defendant who is in the process of committing a felony while possessing an operational firearm does not fall into the category of 'the people' protected by the second amendment." *Smith*, 2025 IL App (5th) 230656, ¶ 25. Furthermore, the issue of whether the AHC statute is facially unconstitutional has been raised in numerous cases outside of the Fifth District, which have found that the statute is facially constitutional because felons are not part of "the people" protected by the second amendment. *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 22. See *People v. McTizic*, 2025 IL App (1st) 240467-U, ¶¶ 8-13; *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 20; *People v. Whitehead*, 2024 IL App (1st) 231008-U, ¶¶ 85, 89; *People v. Thomas*, 2024 IL App (4th) 240315-U, ¶¶ 23-24; *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-22. We respectfully disagree with *Stephens*'s approach and follow our recent decision in *Smith.* See *Stephens*, 2024 IL App (5th) 220828, ¶ 33; *Smith*, 2025 IL App (5th) 230656, ¶ 25.

7

¶ 20    Under the AHC statute, "[a] person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination" of certain enumerated offenses. 720 ILCS 5/24-1.7(a) (West 2016). The AHC statute explicitly states that a prerequisite to a conviction for being an armed habitual criminal is two prior qualifying felonies. See *People v. Gray*, 2024 IL 127815, ¶ 22. The defendant has prior qualifying felony convictions. He pled guilty to one count under the AHC, in exchange for the dismissal of four other charges, after two firearms and cannabis were found on abandoned property next to the defendant's residence and DNA evidence linked the contraband to the defendant. As such, the defendant is not a law-abiding citizen and thus not protected under the second amendment. Because we determined that the defendant is not a law-abiding citizen who is protected under the second amendment, we need not address the second step of the analysis in *Bruen*. The defendant has not demonstrated that the AHC statute violates the second amendment on its face.

¶ 21    We turn to the defendant's constitutional challenge to the AHC as applied to a nonviolent felon. The defendant claims that he is a nonviolent felon with a criminal history related to possession and distribution of controlled substances and has a prior conviction for unlawful use or possession of a weapon by a felon. The State argues that the defendant has not properly developed the record where there was no trial, the defendant did not raise this issue in a motion to withdraw his plea, he did not file a direct appeal, and the defendant did not raise this constitutional challenge in his postconviction petition, which was dismissed without a hearing on the merits.

¶ 22    While the record on appeal is sparse, the record sufficiently demonstrates that the defendant has a criminal history revealing that he is not a law-abiding citizen. "The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate

8

the gun possession of 'law-abiding citizens,' and not felons like defendant." *Baker*, 2023 IL App (1st) 220328, ¶ 37. Challenges seeking to create a distinction between being a "violent felon" and a "nonviolent felon" for purposes of *Bruen* and the second amendment have been rejected. *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 26. For example, *Travis* found that the AHC is constitutional, as applied to the defendant, "irrespective of the violent or nonviolent nature of [the defendant's] convictions." *Travis*, 2024 IL App (3d) 230113, ¶ 37. In *Brooks*, the AHC was upheld as constitutional, as applied to a defendant with prior nonviolent felonies because he was still "not a law-abiding citizen." *Brooks*, 2023 IL App (1st) 200435, ¶ 100.

¶ 23    Because we find that the defendant is not a law-abiding citizen based on his criminal history, no further development of the record is necessary to determine whether he is a nonviolent felon. Therefore, the defendant's as-applied challenge is appropriate at this time, and the AHC is constitutional as applied to him.

¶ 24    The defendant additionally claims that the AHC violates the defendant's right to bear arms under the Illinois Constitution. Article I, section 22, of the Illinois Constitution provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22.

¶ 25    Unlike the United States Constitution, the Illinois Constitution replaces the prefatory language concerning the necessity of a well-regulated militia with the words " '[s]ubject only to the police power.' " *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984) (quoting Ill. Const. 1970, art. I, § 22). The Illinois Constitution also replaces "the people" with " 'the individual citizen.' " *Kalodimos*, 103 Ill. 2d at 491 (quoting Ill. Const. 1970, art. I, § 22).

¶ 26    In *Kalodimos*, our supreme court has explained that the phrase "[s]ubject only to the police power" in the Illinois Constitution was intended to provide the government with an "extraordinary

9

degree of control" over the possession and use of firearms due to the "extraordinary threat to the safety and good order of society" posed by those weapons. (Internal quotation marks omitted.) *Travis*, 2024 IL App (3d) 230113, ¶¶ 41, 42. Furthermore, " 'the police power comprehends laws "restraining or prohibiting anything harmful to the welfare of the people." ' " *Travis*, 2024 IL App (3d) 230113, ¶ 41 (quoting *Kalodimos*, 103 Ill. 2d at 496, quoting *People v. Warren*, 11 Ill. 2d 420, 245 (1957)). In *Stephens*, we determined that "the Illinois Constitution's prohibition of the possession of firearms by felons is a proper exercise of police power." *Stephens*, 2024 IL App (5th) 220828, ¶ 44. Furthermore, "the AHC *** statute[ ] [is] a proper exercise of the state's police power, which allows the state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm." *Travis*, 2024 IL App (3d) 230113, ¶ 43. As such, we find the AHC is constitutional under the Illinois Constitution, facially and as applied to the defendant.

¶ 27                                         III. CONCLUSION

¶ 28     For the foregoing reasons, we affirm the judgment of the circuit court of Macon County.

¶ 29     Affirmed.

¶ 30     JUSTICE McHANEY, specially concurring:

¶ 31     I agree with the majority's ultimate conclusion. I write separately, because I believe the proper approach to the second amendment post-*Bruen* is set forth in *Stephens*.

10